# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICKY TIMM,**

    Plaintiff,

  v.                                          Case No. 21-CV-131-SCD

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

    Ricky Timm applied for social security disability benefits based on several physical and mental impairments, including irritable bowel syndrome (IBS). After a hearing, an administrative law judge (ALJ) denied Timm's claim, finding that although his IBS and other impairments caused some limitations, he was still able to work. Timm seeks judicial review of that decision, arguing that the ALJ did not properly consider the full effect of Timm's IBS on his ability to sustain employment. Timm also contends that he is entitled to a new hearing because the structure for removing the Commissioner of the SSA violates the United States Constitution. Kilolo Kijakazi, Acting Commissioner of the SSA, maintains that substantial evidence supports the ALJ's decision, and that Timm is not entitled to relief on his constitutional claim. I agree with the Commissioner on both points. Thus, I will affirm the denial of disability benefits.

# BACKGROUND

Timm was born on June 2, 1966. R. 22.[1] He was 49 years old on the alleged onset date, defined as a "younger individual," but has since changed age category to "approaching advanced age." *Id*. Since graduating high school, Timm has held a variety of physically demanding jobs. R. 39. Timm worked in the paper industry for years, and at a foundry, completing tasks like operating a forklift. R. 39, 53. His job titles have included "material handler" and "general laborer," and, in general, his professional career has been spent moving heavy objects. *See* R. 69–70. Even as the physical demands of his profession began to take a toll on his body, his employment continued to require heavy lifting. R. 40. Up until the time of his alleged onset date, Timm never received any accommodations despite serious neck pain. *Id*. Eventually, Timm went down to part-time work and applied for disability benefits because, in his words, "I couldn't physically work anymore. I just couldn't do the job." R. 36.

In March 2019, Timm applied for disability insurance benefits, alleging that he became disabled on June 1, 2015, due to IBS, neck pain, and mental impairments. *See* R. 383. Timm does not challenge the ALJ's treatment of either neck pain or his mental impairments. *See generally,* ECF Nos. 17, 22. His focus is on the ALJ's evaluation of his IBS.

The Social Security Commissioner denied the application at the initial level of state-agency review, finding that Timm's condition was not severe enough to keep him from working. R. 87–90. In support of his request for reconsideration, Timm provided evidence that his IBS was severely impacting his ability to work, and that the stress from having to go to work at all compounded his symptoms. *See* R. 82, 84–88, 223. Despite these additional allegations, the Commissioner denied the disability application at the reconsideration level.

---

[1] The transcript is filed on the docket at ECF No. 13-1 to ECF No. 13-15.

*See* R. 96–99. Of Timm's neck pain, the Commissioner wrote "[a]t a recent exam, your neck was seen with no masses, abnormal cervical nodules or thyromegaly." R. 96. Of Timm's intellectual disorder, the Commissioner wrote "[y]our condition results in some limitations in your ability to perform work related activities . . . [h]owever . . . we have determined that you can adjust to other work." *Id.* The Commissioner mentioned Timm's IBS as a limitation but did not discuss it in detail. Timm appealed for a hearing before an ALJ. *See* R. 107.

On June 16, 2020, ALJ Dean Syrjanen held a hearing on Timm's disability application. *See* R. 30–61. Timm's lawyer at the hearing amended his alleged onset date of disability to March 11, 2019. R. 34. Timm testified at the hearing. *See* R. 35–52. After recounting his work history, Timm indicated that he was unable to work due to severe pain and diminution if his physical abilities. *See* R. 52. Timm told the ALJ that he stopped participating in treatment for his neck arthritis in 2015 because it was not working. R. 39–40. He also told the ALJ that he tried neck treatment again recently, but that it just "put me in the same situation I was in before in this. It's just a lost cause . . . the pain comes right back." R. 40.

Next, the ALJ asked about less physically demanding types of work. *Id.* Timm testified that less physically demanding work "doesn't matter" because of "all the years and of stress, it just . . . doesn't matter if I work part time or full time, I still got to run to the bathroom because of my IBS . . . from the stress I'm under." R. 40–41. Timm elaborated that his IBS medication makes him drowsy and blocks his concentration which presents an insurmountable challenged in the paper industry. *See* R. 41. Timm explained that, although he has dealt with IBS for a long time, it had recently become more frequent and severe. R. 41 ("I have no control over it."). Timm testified that his gastrointestinal specialist, Sara Hartman,

helped him deal with his IBS "a lot," while his medication helps "a little bit." R. 42. Next, the ALJ asked Timm how many times a day he must use the restroom. *Id.* Timm testified that it is stress-dependent, but that on a good day it will be twice, while a bad day could be three to five times. *Id.* Timm further explained that three days out of the week were usually "bad days" and the other two were "good." *Id.* Finally, the ALJ summarized Timm's IBS symptoms, saying "it sounds like your symptoms increase with stress and did you say they increase with the amount of physical activity as well?" R. 42–43. Timm replied, "[y]es it does." R. 43.

Next, the ALJ asked about Timm's daily activities since he has been out of work. *Id.* Timm testified that on a typical day, he tries to "relax and not to think about the people at work, just try to relax and I can't relax. All the jobs just – they make it even seem like just twice as worse." *Id.* Timm testified that he can do yard work and house chores, but he has got to do them in "periods" with frequent breaks. *Id.* The "periods" of work usually last 15–30 minutes before Timm needs a 20–30-minute break. R. 44. Timm's lawyer asked him to explain the breaks: "[i]s it because of your neck? Is it because of IBS? Is it because of attention? What is it?" R. 46. Timm said, "[i]t's all of it. I don't -- I can't -- sometimes it's my IBS. Sometimes it's my neck. It all depends on what's involved, what kind of stress you're under." Timm testified that he needs to take bathroom breaks approximately every two hours for 15 minutes. R. 51.

The ALJ also heard testimony from a vocational expert. *See* R. 52–68. The vocational expert testified that a hypothetical person with Timm's age, education (a high school diploma), and work experience (as a forklift operator, general laborer, and a material handler) could not perform his past relevant jobs if he was limited to a restricted range of light work. R. 53–55. That person could, however, work as a marker, a classifier, and a garment sorter. R.

4

54–55. According to the vocational expert, the standard breaks allowed to workers in an unskilled environment would be a 15-minute break early in the shift, a mid-shift meal break, and a 15-minute break later in the shift. R. 55. Timm's lawyer elicited the following testimony from the vocational expert:

> **Q**: Okay. If we take the Judge's first hypothetical and add to it that the individual would need to take unscheduled breaks every two hours for 15 minutes, would there be any competitive work?
> **A**: In addition to regular breaks, Counsel?
> **Q**: Correct.
> **A**: No, unscheduled breaks are not tolerated by employers. It would be work preclusive.

Applying the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a)(4), on June 7, 2020, the ALJ issued a written decision finding that Timm was not disabled, *see* R. 13–23. The ALJ determined that Timm met the insured status requirements of the Social Security Act through December 23, 2023. R. 15. At step one, the ALJ determined that Timm had not engaged in substantial gainful activity since March 11, 2019. R. 15. The ALJ determined at step two that Timm had four severe impairments: cervical spine degenerative disc disease, obesity, IBS, and intellectual disorder. R. 15. At step three, the ALJ determined that Timm did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 16–18. The ALJ noted that under section 5.06, Timm's IBS did not qualify as a listing because the record had "no evidence of obstruction of stenotic areas confirmed by medically accepted imaging or surgery or evidence of anemia, serum albumin, clinically documented abdominal mass, perineal disease, involuntary weight loss, or need for supplemental nutrition of the level required." R.16.

The ALJ next assessed Timm's residual functional capacity (RFC)—that is, his maximum capabilities despite his physical and mental impairments, *see* 20 C.F.R. § 404.1545(a). R. 18–21. The ALJ found that Timm had the RFC to perform a restricted range of light work, with additional limitations to "only frequent handling and fingering" with his left hand, "frequent, but not constant" neck movement, and "simple, routine, repetitive tasks" with no more than "simple instructions" and "occasional decision making and occasional changes in work setting." R. 18. The ALJ accounted for Timm's obesity, neck pain, IBS, and intellectual disability with these restrictions. R. 21. In assessing that RFC, the ALJ considered Timm's subjective allegations, the medical evidence, the medical opinion evidence, and prior administrative medical findings. *See* R. 20–22.

*Physical Impairments*. The ALJ concluded that Timm's subjective allegations of his IBS limitations were undercut by record evidence that "he experienced 80–90% improvement in his symptoms solely with a change in diet." R. 20. To reach this conclusion, the ALJ considered the opinions of two state doctors—Jeffrey Nesta, MD, and Mina Khorshidi, MD—who both concluded that Timm was capable light work. *Id.* Dr. Nesta acknowledged Timm's IBS but did not find it work-preclusive, writing, "[h]e did have a recent colonoscopy that was normal. He has had visits regarding diarrhea and worked with a provider to have a detailed plan to help with it. He is also uncertain what foods trigger his diarrhea, though it is noted that he is intolerant of dairy products. He has only followed some of the plan but did notice an improvement of symptoms." R. 66. Dr. Nesta further explained why—in his opinion—Timm's IBS was not likely to produce the intensity of his alleged symptoms, writing "even though [Timm] alleges GI distress and ongoing need to use the bathroom, he has only followed some of the recommendations, and is not taking medications consistently." R. 68.

6

Dr. Khorshidi's reasoning was identical. She considered evidence, including Timm's medication, other treatment, field observations, longitudinal treatment records, and Timm's lack of treatment seeking behavior to conclude that Timm's statements about his symptoms and the functional effects of his IBS were only "partially consistent" with the medical record. R. 81. The ALJ found these opinions to be "generally reasonable and persuasive," but the ALJ limited Timm's RFC more than either of these doctors suggested. R. 20.

Next, the ALJ considered the opinion of Sara Hartman, APNP. Hartman concluded that Timm would need "a 15-minute break every two hours due to the effects of his IBS impairment and would be absent from work three days per month." *Id.*, R. 400–05. Hartman believed that Timm could work 16 hours per week—the amount of time that Timm worked per week when he went down to part-time employment and that maximum amount of time that Timm could work and remain eligible for benefits. R. 20, 37–38, 47. The ALJ determined that Hartman's opinions were "unsupported by the evidence of record" and therefore unpersuasive. R. 21. In discounting Hartman's opinion, the ALJ relied on treatment notes from an appointment that Timm had with Jaime Filtzkowski, APNP, on February 12, 2018. *See* R. 418–25. Specifically, the ALJ cited treatment notes, where Filtzkowski wrote:

> **Irritable bowel syndrome** – Some improvement with his postprandial diarrhea since adding on fiber and popcorn as a snack and probiotic. We talked about eating more nutritiously. We talked about his high cholesterol and A1c. I have recommended to him to eat oatmeal for breakfast, hard boiled eggs for a snack at work. I will not be signing any disability papers for IBS, I have discussed this with him. He mentions he is 80-90% improved with fiber in his diet.

R. 421. Seizing on this language, The ALJ believed that Hartman's conclusions were overblown. *See* R. 20–21. Furthermore, the ALJ noted that Timm showed 80–90% improvement in his IBS symptoms with only "sporadic" treatment during that time. *Id.* In

7

addition, the ALJ noted that Timm was recently able to engage in significant part-time work. *Id.*

Finally, the ALJ considered an opinion from Alejandro Garcia, M.D., who opined that Timm was limited to sitting, standing, and walking less than two hours per day with lifting less than 10 pounds. *Id.* The ALJ found Dr. Garcia's opinion unpersuasive because Timm consistently showed evidence of a normal gait, full strength, intact neurological functions, and sensation. *Id.* Furthermore, the ALJ noted that Dr. Garcia had not treated Timm since 2017, and Timm had continued to work in exertionally heavy jobs since then. *Id.* The record is replete with medical providers professionally opining that Timm can physically work. *E.g.*, R. 405 ("Patient has no physical limitations. Everything is internal."). Following these conclusions, the ALJ arrived at the above-noted RFC, that Timm could perform a restricted range of light work, with additional limitations to "only frequent handling and fingering" with his left hand, "frequent, but not constant" neck movement. *See* R. 21.

*Mental Impairments*. The ALJ considered the opinions of two state agency psychologists, Drs. Robert Barthell, Psy.D, and Lisa Fitzpatrick, Psy.D. Dr. Barthell found that Timm demonstrated no mental limitations while Dr. Fitzpatrick noted moderate limitations related to processing instructions, maintaining attention, and completing a normal workday. *Id.* The ALJ next considered Dr. Krawiec's opinion that Timm "could possibly" experience interference with understanding and concentrating. *Id.* The ALJ credited Dr. Krawiec's opinion and found that it comported with both Barthell's (no limits) and Fitzpatrick's (moderate limits) opinions. *Id.* As such, the ALJ arrived at his limitations for "simple, routine, repetitive tasks" with no more than "simple instructions" and "occasional decision making and occasional changes in work setting." *See* R. 18.

8

Case 1:21-cv-00131-SCD   Filed 03/21/22   Page 8 of 16   Document 24

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Timm was not able to perform any past relevant work. R. 22. The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Timm could perform. R. 22–23. Relying on the vocational expert's testimony, the ALJ mentioned three examples: marker, garment sorter, and classifier. R. 23. Based on those findings, the ALJ determined that Timm was not disabled at any time from his amended alleged onset date through the date last insured. *Id*. The SSA's Appeals Council denied Timm's request for review, R. 1–6, making the ALJ's decision the final decision of the Commissioner of the SSA, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On February 1, 2021, Timm filed this action seeking judicial review of the Commissioner's final decision. *See* ECF No. 1. The matter was assigned to me and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 7. It is now fully briefed and ready for disposition. *See* ECF Nos. 17, 21, 22.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse a Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

9

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

In his brief, Timm raises two potential grounds for relief. First, he argues that the ALJ committed legal error in evaluating his IBS. Second, he argues that his disability claim should be remanded for a new hearing because the denial of benefits resulted from a constitutionally defective adjudicative process.

**I.   IBS**

First, Timm argues that the ALJ did not logically connect the evidence to his conclusion that Timm could perform light work with standard breaks. The Commissioner responds that Timm does not identify any objective medical evidence that would support any restrictions beyond the RFC. ECF No. 21 at 17.

Under the deferential standard of review, I conclude that substantial evidence supports the ALJ's decision. In his brief, Timm points out several examples of record evidence that suggest greater limitations for IBS than what the ALJ set forth in his RFC. ECF No. 17 at 13–

10

20. For example, a month after Timm made the comment that his "stools have improved 80-90%," he reported to Hartman that he still had diarrhea 5–6 times per day. *Id.* at 13–14 (citing R. 366). Timm highlights several examples of medical evidence that show how stress exacerbates IBS, a point he says the ALJ did not consider. *Id.* (citing R. 578–79). Timm also includes a scientific article about how IBS fatigues those who suffer from it. ECF No. 23.

It is common for Social Security cases to contain conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). It is not my role, however, to resolve a conflicted record. As the "trier of fact," the ALJ has the "duty to resolve that conflict." *Id.*; *see also* 20 C.F.R §§ 416.927(c), 416.929 (directing that ALJs weigh conflicting medical evidence). As for evaluating medical opinion evidence, the regulations require that the ALJ consider the medical professional's explanation *and* the objective medical evidence presented by the medical source. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The most important factors in weighing medical opinions are supportability and consistency with the evidence. *See* 20 C.F.R. § 416.927. As previously mentioned, my role is simply to say whether the ALJ's decision is supported by substantial evidence.

The ALJ here did not commit reversible error in evaluating Timm's IBS. The ALJ based his conclusion on the reasonable opinions of state agency doctors, objective medical evidence such as colonoscopy results, and treatment notes from gastrointestinal professionals who had treating relationships with Timm. Even Hartman, the medical professional who comes closest to supporting Timm's position, does not provide unequivocal and consistent evidence that Timm's IBS is as severe as he alleged. Hartman signed a medical record on March 14, 2019 that classified Timm's IBS as "stable" and stated that Timm was "without diarrhea." R. 366. While Hartman opines elsewhere in the record that Timm cannot work

11

without breaks every two hours, her opinions are neither internally consistent, nor consistent with the other medical professionals. The ALJ noted this and made a reasonable determination to discount Hartman's opinion. Without Hartman's opinion, Timm is left with only his subjective reports that his IBS symptoms limit his ability to work, which contradict the opinion of the provider hew actually saw for IBS treatment. R. 368 ("I will not be signing any disability papers for IBS.") Simply put, Timm's insistence that his IBS is work-preclusive is not enough to overcome the ALJ's conclusion—based on substantial evidence—that it is not. *See Vad v. Saul*, No. 19-C-1089, 2020 WL 21229585, at *2 (E.D. Wis. May 5, 2020) (citing 20 C.F.R. § 404.1521) ([A] claimant's subjective allegations are not enough to establish disability.").

But that's not all. The ALJ also indicated he did not fully credit Timm's assertions because he "only underwent sporadic treatment for his IBS complaints." R. 21. This is reflected in the record, where Nurse Filtzkowski indicates that Timm "did not follow much of the plan," which had included eating fiber and eating more nutritiously. R. 368. And Hartman was noted elsewhere that Timm had not taken cholestyramine, which had been prescribed to help with IBS. R. 366. Given the sporadic treatment and evidence that Timm "did not follow much of the plan," the ALJ was entitled to conclude that Timm's symptoms were not as disabling as he alleged. *Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012) ("a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility."); *Wilder v. Chater,* 64 F.3d 335, 336 (7th Cir. 1995) ("a disabled person cannot obtain social security disability benefits if he or she refuses to follow a prescribed course of treatment that would eliminate the disability."); *Ehrhart v. Sec'y of Health & Hum. Servs.,* 969 F.2d 534, 538 (7th Cir. 1992) ("The Secretary may not find total disability when a

12

claimant inexcusably refuses to follow a prescribed course of medical treatment that would eliminate his total disability.")

The ALJ determined at step two that Timm's IBS constituted a severe impairment, recognizing that it limited his ability to do basic work activities, 20 C.F.R. § 404.1520(c). R. 15. At step three, the ALJ evaluated Timm's IBS symptoms under Listing 5.06 but concluded that it did not rise to that level. R. 16. In the subsequent steps, when assessing Timm's RFC, the ALJ again discussed Timm's IBS, R. 19–20. With substantial opinion evidence provided by several medical professionals supporting his conclusion, the ALJ concluded that Timm's IBS symptoms were manageable with treatment and would therefore not interfere with his work responsibilities to the level he alleged. R. 20. The ALJ accounted for stress by limiting the type of work to settings with minimal stress. R. 19. The ALJ therefore considered the limiting effects of Timm's IBS and explained how it influenced the Timm's RFC. Ultimately, the ALJ chose not to credit the full extent of Timm's subjective allegation. But the ALJ also explained the evidence supporting his conclusion that Timm's IBS did not preclude him from working. This process produced a legally sufficient RFC.

## II.      Constitutional Claim

Timm argues that the adjudication of his claim was constitutionally defective because Section 702 of the Social Security Act, 42 U.S.C. § 902, which limits the president's authority to remove the commissioner without good cause, violates the separation of powers. Because the removal clause is unconstitutional, Timm's theory goes, former Commissioner Andrew Saul lacked authority to delegate adjudication of this matter to others, including the ALJ and the Appeals Council. According to Timm, his case should be remanded for a de novo hearing

13

before "new administrative adjudicators to eliminate the possibility of any constitutional taint." ECF No. 22 at 17 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)).

Timm's argument is identical to one that I considered and rejected in *Robinson v. Kijakazi*, No. 21-CV-238-SCD, 2022 WL 443923 (E.D. Wis. Feb. 14, 2022). In that case, I explained three reasons why the plaintiff's adjudication was not constitutionally defective. *Id.* at *5–7. First, the unconstitutional removal clause did not deprive the commissioner of any delegation powers, so the ALJ was lawfully appointed. *Id.* Second, an unconstitutional clause in an agency's organic act does not taint all action by the agency. *Id.* Therefore, even if the commissioner's removal provision is unconstitutional, it does not follow that there is a presumption of invalidity for her appointment or any of the agency's other actions. *Id.* Third, unconstitutional structure notwithstanding, a plaintiff must demonstrate a causal link between the removal clause and his alleged injuries. *Id.* For a plaintiff to be entitled to relief, he must show that the Administration's structure "inflicted compensable harm." *Id.* (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021)).

My decision in *Robinson* controls this case as well. I will briefly focus on the fact that Timm has not demonstrated a causal link between the unconstitutional removal clause in § 903(a)(3) and his alleged injuries. He does not allege that any official who headed the SSA while his disability claim was pending played any role in deciding his claim. Nor does he allege that either President Biden or President Trump would have intervened to stop the commissioner from acting but for the unconstitutional removal clause in § 903(a)(3). And it is unlikely he could. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern

the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

Timm protests that the Commissioner waived her argument on causation, but that's not accurate. The Commissioner specifically argued that Timm failed to make a showing that that "Section 902(a)(3)'s removal restriction **somehow caused** the denial of his benefits claim." ECF No. 21 at 9 (emphasis added). Timm also argues that the ALJ decided this case under regulations promulgated by the Commissioner when the Commissioner lacked constitutional authority. This argument relies on a misreading of *Collins*—that court held that the unconstitutional removal clause does not doom all the commissioner's actions, including his or her delegation of authority to others to decide individual disability claims. *See Nathaniel H.*, 2021 U.S. Dist. LEXIS 239561, at *15–16 ("But . . . the unconstitutional nature of the removal restriction in section 902(a)(3) did not automatically invalidate the actions taken by the Acting Commissioner or the SSA during the Acting Commissioner's tenure."). Rather, under *Collins*, a plaintiff must show a causal connection between unconstitutional structure and harm. But Timm has not alleged any connection between the unconstitutional limit on the commissioner's removal and the adjudication of his disability claim. *See* ECF No. 22 at 13–16. Instead, Timm asks me to presume that he was harmed. *Id.* at 14. I rejected this argument in *Robinson*, and I reject it here. *See also Schwechel v. Kijakazi*, No. 20-cv-700-wmc, 2022 U.S. Dist. LEXIS 7438, at *15–16 (W.D. Wis. Jan. 14, 2022) (noting that no district court had credited the plaintiff's constitutional claim as of the date of that decision); *see also Ramos v. Comm'r of Soc. Sec.*, No. 1:20-cv-01606-EPG, 2022 WL 105108, 2022 U.S. Dist. LEXIS 5721, at *7 (E.D. Cal. Jan. 10, 2022) (collecting cases).

## CONCLUSION

For all the foregoing reasons, I find that substantial evidence supports the ALJ's decision, and Timm is not entitled to relief on his constitutional claim. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 21st day of March, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge